UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 2:13-cv-132-DLB


CATHY SEARS,                                                                        PLAINTIFF,


V.                              **MAGISTRATE JUDGE'S REPORT**
                                       **& RECOMMENDATION**


THE DREES COMPANY, et al.,                                           DEFENDANTS.


*** *** *** ***

Plaintiff, Cathy Sears, alleges that Defendants, The Drees Company ("Drees") and Union

Security Insurance Company ("Union"), wrongfully terminated her long-term disability benefits

in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

("ERISA"). [R. 1 at ¶ 12]. Additionally, she claims that Defendant, U.S Bank National

Association ("U.S. Bank"), improperly refused to consider her claim for short- and long-term

disability benefits. [R. 1 at ¶ 24].

There are several motions presently pending before the Court regarding Plaintiff's claims

for disability benefits. Drees and Union have jointly moved for summary judgment, or, in the

alternative, judgment on the administrative record. [R. 58]. U.S. Bank has moved for summary

judgment. [R. 46]. And Plaintiff has filed a motion for summary judgment against Drees and

Union jointly, [R. 55], and a motion for summary judgment against U.S. Bank [R. 50].

Consistent with local practice, the matter has been referred to the undersigned for preparation of

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 68]. Fully briefed, this matter is now ripe for review.

## I.  BACKGROUND

In connection with her employment in a residential real estate sales position with Drees, Plaintiff accepted a disability benefit plan governed by a group disability policy issued to Drees by Union.[1] [Rs. 1 at ¶ 8, 58-1 at 1 n. 1].  On March 17, 2009, Plaintiff submitted a claim to Union for long-term disability benefits due to depression and anxiety disorder.  [R. 30-6 at 686]. Under Union's plan, an employee is considered "disabled" only if, because of an injury or sickness, she is "under the regular care and attendance of a doctor" and she is "prevent[ed] . . . from performing at least one of the material duties of [her] regular occupation." [R. 30 at 8]. Additionally, the plan grants Union discretionary authority to "determine eligibility for participation or benefits and to interpret the terms of the policy." [R. 30 at 27].

Although Union was engaged in an ongoing process of evaluating medical evidence and opinions pertaining to Plaintiff's claim, it nonetheless paid disability benefits to Plaintiff from June 16, 2009 until January 16, 2010. [R. 30-2 at 212-16].  However, at that point, Union cancelled Plaintiff's benefits, finding that Plaintiff was no longer "disabled" under the terms of its disability plan. [R. 30-2 at 212-16].  After Union determined that Plaintiff was no longer eligible for disability benefits, she appealed the termination of her benefits, but her appeal was denied. [R. 30-2 at 245-49].  A second appeal was also unsuccessful. [R. 30-2 at 259].

In October of 2010, while Plaintiff's first appeal with Union was still ongoing, she accepted a position in U.S. Bank's mortgage loan department. [R. 1 at ¶ 19].  Sometime in April

---

[1] Plaintiff's Complaint initially listed Assurant, Inc. ("Assurant") as a defendant and alleged that Assurant had issued a group disability policy to Drees. [R. 1 at ¶ 8].  However, the parties agreed that Assurant was improperly named in the Complaint, and, upon joint motion of the parties, the Court substituted Union as a defendant in place of Assurant. [Rs. 35, 37].  Union is a wholly-owned subsidiary of Assurant. [R. 15].

2012, Plaintiff was hospitalized for depression and anxiety. [R. 50-4 at ¶ 4(a)]. Shortly thereafter, U.S. Bank terminated Plaintiff's employment. [R. 1 at ¶ 20]. Several months later, on November 21, 2012, Plaintiff's counsel wrote a letter to the U.S. Bank branch Plaintiff formerly worked for in Florence, Kentucky, inquiring about disability benefits claim forms under U.S. Bank's short- and long-term disability benefit plans. [R. 1-1]. After receiving no response from U.S. Bank, counsel sent a second letter to the same bank branch on January 22, 2013. [R. 1-2]. The bank branch never responded to either letter, and it failed to forward either letter to U.S. Bank's employee benefits administration. [R. 46-2 at 2]. The record reveals no further efforts on the part of the Plaintiff, formal or informal, to initiate a disability claim with U.S. Bank.

Plaintiff filed her Complaint in this Court on July 24, 2013. [See R. 1]. Count I of Plaintiff's complaint alleges that Drees and Union wrongfully terminated her benefits and breached their fiduciary duties to her. [R. 1 at ¶¶ 12, 15]. Count II of Plaintiff's complaint alleges wrongful termination of benefits and breach of fiduciary duty by U.S. Bank. [R. 1 at ¶ 24].

U.S. Bank moved the Court for Summary Judgment on April 4, 2014. [R. 46]. Plaintiff filed a response and moved for Summary Judgment against U.S. Bank on May 30, 2014. [R. 50]. Next, Plaintiff filed for Summary Judgment against Drees and Union jointly on June 12, 2014. [R. 55]. On that same day, Drees and Union jointly moved for Summary Judgment, or, in the alternative, judgment on the administrative record.[2] [R. 58]. On June 23, 2014, U.S. Bank filed its response to Plaintiff's motion for summary judgment and its reply to Plaintiff's responses. [R. 59]. Drees and Union responded to Plaintiff's motion for summary judgment on July 10, 2014.

---

[2] Plaintiff named both Drees and Union as Defendants in her claim for benefits. [See R. 1]. However, Plaintiff's claim challenges Union's decision to deny benefits and articulates no independent basis of liability against Drees. [R. 1 at ¶¶ 15, 17]. Drees and Union have chosen to jointly move for summary judgment against Defendant, [R. 58], and the Court notes that any relief it provides to Drees is equally applicable to Union and vice versa.

[R. 63]. Finally, Plaintiff filed a reply to U.S. Bank's response on July 14, 2014. [R. 64]. These matters are properly before the Court on the District Court's referral to the Magistrate Judge for Recommendation. [R. 68].

At the outset, it is apparent to the Court that Plaintiff's claims against Drees and Union involve little factual overlap with her claims against U.S. Bank. Because of this lack of factual overlap, the Court will analyze Plaintiff's claims against the different Defendants in turn. Consistent with the chronological ordering of the events of this case, the Court will address Plaintiff's claims against Drees and Union first, followed by her claims against U.S. Bank.

## II. ANALYSIS

### A. Plaintiff's Claims Against Drees and Union

In Count I of her Complaint, Plaintiff alleges that she is entitled to recover compensatory damages under 29 U.S.C. § 1132(a)(1)(B) of ERISA for Drees and Union's wrongful termination of her long-term disability benefits. [R. 1 at ¶ 1]. Further, Plaintiff contends that she is entitled to recover damages, pursuant to 29 U.S.C. § 1132(a)(3), for breach of fiduciary duty. [R. 1 at ¶ 1]. More specifically, Plaintiff claims that Drees and Union breached their fiduciary duty to her by terminating her disability benefits "in bad faith and without due exercise of reasonable judgment . . . ." [R. 1 at ¶ 15].

A denial of disability plan benefits challenged under § 1132(a)(1)(B) is "reviewed de novo unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1063-64 (6th Cir. 2014) (citations and internal quotation marks omitted). "If a plan affords such discretion to an administrator or fiduciary, [the Court] review[s] the denial of benefits only to determine if it was 'arbitrary and capricious.' " Marks v. Newcourt Credit

4

Grp., Inc., 342 F.3d 444, 456 (6th Cir. 2003) (citing Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991)).  Here, the parties agree that the plan affords the administrator discretion; thus, the arbitrary and capricious standard applies.[3]

"[R]eview under the arbitrary and capricious standard is extremely deferential and has been described as the least demanding form of judicial review."  McClain, 740 F.3d at 1064. Under this standard, an administrator's decision "must be upheld if it results from a deliberate principled reasoning process and is supported by substantial evidence."  Id. at 1064-65 (citations and internal quotation marks omitted).  Furthermore, "[w]hen reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made."  Id. at 1064 (citations omitted).

By way of contrast, "[c]laims for breaches of fiduciary duty . . . are not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision."  Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 427 (6th Cir. 2006).  With respect to these claims, where no deference to an administrator's decision is required, the parties' arguments are evaluated under the standards of Fed. R. Civ. P. 56(a), which provides that summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party.  Pack v. Damon Corp., 434 F.3d 810, 813 (6th Cir. 2006).

---

[3] The relevant portion of Union's policy states:

The policyholder delegates to [Union] and agrees that [Union has] the sole discretionary authority to determine eligibility for participation or for benefits and to interpret the terms of the policy.  All determinations and interpretations made by us are conclusive and binding on all parties.

[R. 30 at 27].

Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In their joint motion for summary judgment, Drees and Union challenge, as a matter of law, Plaintiff's ability to bring a § 1132(a)(3) compensatory damages claim for breach of fiduciary duty when she has also asserted a § 1132(a)(1)(B) claim to recover damages for the wrongful denial of benefits. [R. 58-1 at 18-19]. As an initial matter, the Court will determine whether Plaintiff can legally maintain a cause of action against Drees and Union for breach of fiduciary duty under § 1132(a)(3) before it proceeds to the merits of her claims.

*1. Interplay of § 1132(a)(1)(B) and (a)(3)*

As noted above, in Count I of her Complaint, Plaintiff seeks to recover damages against Drees and Union under both § 1132(a)(1)(B) and § 1132(a)(3) of ERISA.[4] [R. 1 at ¶ 1]. However, the ability of participants to bring claims under § 1132(a)(3) is limited to those participants "who may not avail themselves of § 1132's other remedies," including § 1132(a)(1)(B). Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). Put

---

[4] 29 U.S.C. § 1132 states in pertinent part:

    (a) Persons empowered to bring a civil action
        A civil action may be brought—
        (1) by a participant or beneficiary—
           …
           (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
           …
        (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

another way, ERISA claimants may not "simply characterize a denial of benefits as a breach of fiduciary duty . . . ." Id. at 616.

Drees and Union argue that Plaintiff's breach of fiduciary duty claim under § 1132(a)(3) is simply a repackaged denial of benefits claim. [R. 58-1 at 18-19]. Plaintiff has not responded to this assertion by Drees and Union. As this argument pertains to Plaintiff's breach of fiduciary duty claim, it will be evaluated under the standards of Fed. R. Civ. P. 56(a). See Moore, 458 F.3d at 427.

From the record, it is apparent that Plaintiff seeks monetary recovery under both § 1132(a)(1)(B) and § 1132(a)(3) on the same predicate set of facts—the improper processing of her claim for benefits. Plaintiff has cited no material fact in the record by which this Court could differentiate her fiduciary duty claim from her denial of benefits claim, and she has neither argued that the claims are different, nor responded in opposition to Drees and Union's argument that the claims are the same. Therefore, the Court finds that § 1132(a)(1)(B) provides an adequate avenue for relief, and summary judgment is appropriate as a matter of law on Plaintiff's § 1132(a)(3) claim. See Fed. R. Civ. P. 56(a); Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 454 (6th Cir. 2003) (explaining that a beneficiary may not seek relief for an alleged breach of fiduciary duty under § 1132(a)(3) when an adequate remedy is available under (a)(1)(B)). Accordingly, the Court recommends that Drees and Union's Motion for Summary Judgment be granted to the extent it seeks dismissal of that portion of Plaintiff's Count I seeking relief under § 1132(a)(3). Now, the Court will proceed with its assessment of Plaintiff's § 1132(a)(1)(B) claim against Drees and Union.

## 2. Union's Internal Review of Plaintiff's § 1132(a)(1)(B) Claim

This Court is charged with determining whether Union can offer a reasoned explanation, based on the evidence, for its judgment that Plaintiff was not disabled under the terms of the policy. See McClain 740 F.3d at 1064-65. On the one hand, Drees and Union assert that the review Union conducted of Plaintiff's disability claim lives up to this standard. [R. 58-1 at 16-18]. On the other hand, Plaintiff's motion for summary judgment offers a number of arguments in support of her claim that Union's decision was arbitrary and capricious. [R. 55]. The Court will now consider Union's review of Plaintiff's disability claim before moving on to address each of Plaintiff's arguments.

Union concluded that Plaintiff was not "disabled" under the terms of its long-term disability policy after it conducted a lengthy review of her claim. Plaintiff filed her claim on March 17, 2009, stating that she was unable to work due to depression and anxiety. [R. 30-6 at 686]. Specifically, Plaintiff asserted that her symptoms were caused by her "lack of income" in her commission-based sales position. [R. 30-6 at 687]. Union initially approved Plaintiff's claim, with disability benefits payments commencing June 16, 2009, while it continued to evaluate her limitations and potential to return to work.[5] [R. 30-1 at 141-45]. To that end, Union requested Plaintiff's medical records and ordered one of its staff psychologists, Dr. Ellen Snoxell, to conduct a medical file review. [R. 30-1 at 156-57, 159-61].

---

[5] At one point, Plaintiff's Complaint asserts that she is seeking benefits from Union beginning from the date of December 15, 2008. [R. 1 at ¶ 13]. This is contradicted later in the Complaint, where Plaintiff contends she is entitled to benefits from Drees and Union from the starting point of December, 2009. [R. 1 at A]. December 15, 2008 is the day that Plaintiff claims she first became disabled. [R. 1 at 11]. Drees and Union provide evidence that Plaintiff's benefits did not commence until June 16, 2009 because that date marked the exhaustion of the disability plan's qualifying period. [R. 30-1 at 141-45]. Plaintiff does not dispute there was a qualifying period, and she offers no further argument in support of benefits before that point, thus the Court finds that Plaintiff is not entitled to any benefits before June 16, 2009.

Dr. Snoxell's review revealed that Plaintiff had failed to follow through on psychiatric referrals and had not received treatment for psychiatric symptoms since February, 2009. [R. 30-1 at 158]. In accord with Dr. Snoxell's findings, Union terminated Plaintiff's benefits and had already sent her a letter to that effect when Plaintiff provided new evidence that her mental health provider, Nurse Lisa Arrasmith, had diagnosed her with "severe depression" on July 14, 2009. [Rs. 30-1 at 161, 164-68; 30-5 at 592; 30-6 at 603]. In response to this new information, Union obtained Plaintiff's updated medical records and requested that another of Union's staff psychologists, Dr. Mike Jones, conduct a behavioral health assessment. [R. 30-1 at 184-87, 532-34].

Dr. Jones's assessment concluded that Plaintiff "was still having difficulty with panic symptoms and some cognitive problems" that could affect her work. [R. 30-5 at 532-34]. Additionally, Dr. Jones recommended that Plaintiff follow up with Nurse Arrasmith in October. [R. 30-5 at 533]. Based on Dr. Jones's analysis, Union released benefits for the period from July 17, 2009 to October 16, 2009, at which time Dr. Jones would again assess Plaintiff's claim. [R. 30-1 at 194].

Plaintiff met with Nurse Arrasmith again in October, and Arrasmith determined that Plaintiff would be capable of returning to work in "possibly 6-12 months." [R. 30-5 at 527-30]. Arrasmith explained that Plaintiff reported having "panic attacks causing withdrawal and isolation," and that, as a result, Plaintiff had not been leaving her house or engaging in normal activities. [R. 30-5 at 529]. In his second assessment of Plaintiff's claim, Dr. Jones found that Arrasmith's recommendation of six to twelve months off work was not supported by medical literature and that surveillance of Plaintiff was necessary to gage her daily activity level. [R. 30-2 at 203].

Following Dr. Jones's assessment, Union ordered three days' surveillance of Plaintiff. [R. 30-5 at 502-03]. Plaintiff was inactive in her home during the first day of surveillance. [R. 30-4 at 488]. However, over the course of the second and third days of surveillance, Plaintiff was seen driving around town, shopping, checking into a hotel room, and dining at two different restaurants with a companion. [R. 30-4 at 488]. The investigator's report noted that Plaintiff was observed smiling and laughing at different points throughout the surveillance. [R. 30-4 at 490, 494, 497]. After viewing the surveillance footage, Dr. Jones and Nurse Arrasmith each concluded that the video contradicted Plaintiff's claims that she was isolated and withdrawn. [R. 30-2 at 208]. As a result, Union informed Plaintiff that benefits had been paid through January 16, 2010 and that no further benefits would be paid. [R. 30-2 at 225].

After Union terminated Plaintiff's benefits, she sought reconsideration of that decision. [R. 30-4 at 462-67]. Attempting to discredit the surveillance footage, Plaintiff explained that her impairments "ebb and flow" and that the investigator filmed her on one of her "good days." [R. 30-4 at 462]. Plaintiff also submitted evidence that she was once again receiving mental health treatment after a "lapse in care." [R. 30-4 at 462]. Union ordered an independent review of Plaintiff's entire claim file, including updated medical records. [R. 30-2 at 244]. The reviewer, Dr. Jean Dolpe, concluded that, although Plaintiff exhibited some symptoms of depression, she was not functionally impaired. [R. 30-3 at 344]. While in the process of evaluating Plaintiff's appeal, Union learned that Plaintiff had filed a social security claim but was awaiting a decision and that she had accepted a new job with U.S. Bank. [R. 30-4 at 460]. Considering all of the information before it, Union denied Plaintiff's appeal. [R. 30-2 at 246-49].

Plaintiff submitted a second appeal, reasserting that the surveillance video lacked probative value because her condition ebbs and flows. [R. 30-3 at 322]. Union reviewed the

entirety of Plaintiff's claim file. [R. 30-2 at 257-59]. Based on Plaintiff's medical records, the internal assessments of Union's benefits team, the independent medical review of Dr. Dalpe, and the inconsistencies between Plaintiff's statement regarding her condition and the video footage, Union concluded that Plaintiff was not disabled under the terms of its policy. [R. 30-2 at 259].

Having examined the facts before it and the administrative record compiled by Union, the Court finds nothing that would indicate that Union acted arbitrarily or capriciously when it terminated Plaintiff's long-term disability benefits. Dr. Dalpe's review, which factored into Union's decision, found no significant evidence of psychiatric impairment since January, 2010, and it found that Plaintiff's ability to actively seek employment and secure a new job indicated that Plaintiff could function in a work environment. [R. 30-3 at 344]. Based on this opinion, and all the other evidence in the record, it seems entirely reasonable for Union to conclude that Plaintiff was not "prevent[ed] . . . from performing at least one of the material duties of [her] regular occupation," as required for Plaintiff to collect benefits under the terms of Union's policy. [R. 30 at 8]. Nonetheless, Plaintiff's motion for summary judgment presents several arguments for why this Court should find that Union's decision was arbitrary and capricious. The Court will now address each of those arguments below to determine whether they compel a finding that Union's decision to terminate Plaintiff's benefits was arbitrary and capricious.

### 3. Updated Medical Records

In her motion for summary judgment, Plaintiff complains that, in making its decision to deny her benefits, Union acted improperly by not considering updated medical evidence from Plaintiff's treating therapist or doctor. [R. 55 at 5]. At the outset, the Court notes that Plaintiff's first claim is contradicted by the record. Prior to Plaintiff's penultimate appeal, Union requested a list of all treating provider data since January 1, 2010. [R. 30-2 at 230]. After the treating

provider records were received, Union ordered an independent review of Plaintiff's entire file, including the newly-submitted provider data. [R. 30-2 at 244]. Thus, when Union denied Plaintiff's appeal, its decision was based on current data.

Furthermore, to the extent that Plaintiff may be arguing that her medical information should have been updated between her first and second appeal, she fails to clarify to the Court whether any updated medical information actually existed, and she does not explain why she failed to submit any updated medical evidence. This Court's review is limited to the administrative record before it. McClain, 740 F.3d at 1064 (citations omitted). That record shows that Union undertook a deliberate, principled review of the most recent medical evidence it had access to. See id. at 1064-65. Plaintiff's unsupported assertion that Union should have requested updated medical records (that may not exist) does not compel this Court to find that Union's decision was arbitrary and capricious.

### 4. Independent Medical Analysis of Plaintiff

Plaintiff's next argument in her motion for summary judgment is that Union's decision to deny benefits was arbitrary and capricious because it did not contain an independent analysis of Plaintiff's medical condition. [R. 55 at 5]. This argument, just like Plaintiff's previous argument, is not supported by the record.

During Union's appeals process, Dr. Dalpe, a board-certified psychiatrist, conducted an independent review of Plaintiff's claim file. [R. 30-3 at 340-45]. Dr. Dalpe was instructed to determine whether Plaintiff's diagnoses were supported by her medical records, whether her functional ability had changed since Union ceased paying her benefits, whether her treatment was sufficient, and whether there were any inconsistencies between Plaintiff's complaints and her functional status. [R. 30-3 at 368-69]. After reviewing the entirety of Plaintiff's claim file,

Dr. Dalpe concluded that the evidence did not indicate any significant functional impairment. [R. 30-3 at 344]. Plaintiff's assertion that Union did not conduct an independent review of her condition is altogether unsupported by the record, and it does nothing to persuade this Court that Union acted arbitrarily and capriciously in denying her claim.

    *5. Physical Examination*

    Plaintiff further complains that Union acted arbitrarily and capriciously when it failed to have her physically examined prior to terminating her benefits. [R. 55 at 5]. However, the language in Union's policy does not mandate a physical examination of a claimant, but instead provides that Union "*may* ask you to be examined as often as we require at any time we choose." [R. 30 at 27] (emphasis added). In Calvert v. Firstar Fin., Inc., the Sixth Circuit reviewed similar permissive language in a long-term disability policy and found that, while such language *allows* an insurer to physically examine a claimant, "nothing in the plan language [] expressly bars a file review by a physician in lieu of such a physical exam." 409 F.3d 286, 295 (6th Cir. 2005). Calvert held that, when a physical examination is permitted but not required under a plan, reliance on a file review "does not, standing alone, require the conclusion that [a defendant] acted improperly . . . ." Id. Nonetheless, the Calvert Court also reached the conclusion that, in some instances, the failure to conduct a physical examination could "raise questions about the thoroughness and accuracy of the benefits determination." Id.

    Although mindful of Calvert's holding that, in some cases, the failure to conduct a physical examination may cast doubt on the legitimacy of a benefits determination, the Court finds that Union's decision not to order a physical examination in the present case does not affect the credibility of its decision to terminate Plaintiff's benefits. In denying benefits, Union relied on all the evidence contained within the record, including the physical observations of Plaintiff

captured on the surveillance tape and the reports of Plaintiff's own treatment providers, Nurse Arrasmith and Mr. Stover, which contained numerous observations of Plaintiff's physical state. [R. 30-2 at 260-62]. Thus, there was already evidence of Plaintiff's physical state in the record, lessening the need for a physical examination. Furthermore, Plaintiff alleged a mental health disability. Therefore, Union could have found that Nurse Arrasmith and Mr. Stover's reports on Plaintiff's mental state were more probative of the validity of her disability claim than a physical examination would be. Considering the "extreme deference" owed Union under the arbitrary and capricious standard, the Court cannot conclude that there was anything improper in Union's decision not to conduct a physical examination of Plaintiff. See McClain, 740 F.3d at 1064.

### 6. Surveillance Footage

In her final argument, Plaintiff suggests that Union acted in an arbitrary and capricious manner by basing its "entire administrative decision . . . upon the interpretation of a distant seventy-two minute surveillance video taken by an unknown private investigator from a distance." [R. 55 at 6]. Once again, Plaintiff's argument is unsupported by the record. In fact, the record reflects that, rather than relying solely on the surveillance video, Union also considered the opinions of Plaintiff's healthcare providers, its own in-house medical professionals, and an independent psychiatrist. [R. 30-2 at 260-63].

Moreover, there is nothing inherently improper about a claims administrator conducting surveillance to document a Plaintiff's functional capabilities. See O'Bryan v. Consol Energy, Inc., 477 F. App'x 306 (6th Cir. 2012). In O'Bryan, plaintiff faulted the claims administrator for relying too heavily on a video surveillance report. Id. at 309. Similar to the present case, where the Plaintiff has claimed she has good days and bad days, the plaintiff in O'Bryan claimed the surveillance video captured him performing minimal physical activities that were not

representative of his sustained capability. Id. As is the case here, the reviewing doctors in O'Bryan concluded that the Plaintiff's actions, as caught on video, contradicted the symptoms he reported to his medical examiners. Id. The Sixth Circuit held that "[n]o arbitrary and capricious finding can be based on this reasoned explanation." Id. Since this is the exact same explanation offered by Union, the Court finds that its use of surveillance footage does not support a finding that Union acted arbitrarily and capriciously.

In sum, the Court cannot conclude Union acted in an arbitrary and capricious manner when it terminated Plaintiff's long-term disability benefits. Union has offered a reasoned explanation, based on the evidence, for its decision that Plaintiff is not disabled under the terms of its plan, and Plaintiff's arguments to the contrary are not persuasive. Accordingly, the Court recommends that that portion of Drees and Union's motion for judgment on the administrative record seeking dismissal of Plaintiff's § 1132(a)(1)(B) claim should be granted. Because Plaintiff has no claims remaining against Drees and Union, the Court will now address her claims against U.S. Bank.

### B.  Plaintiff's Claims Against U.S. Bank

In Count II of her Complaint, Plaintiff alleges that she is entitled to recover compensatory damages under § 1132(a)(1)(B) for U.S. Bank's refusal to pay disability benefits to her. [R. 1 at ¶¶ 1, B].  Further, Plaintiff contends that she is entitled to recover damages from U.S. Bank pursuant to § 1132(a)(3) because the bank breached its fiduciary duty to her by refusing to pay benefits. [R. 1 at ¶ 1, 24].  To be clear, Plaintiff does not allege that she lodged a formal administrative complaint with U.S. Bank's benefits administration.  Rather, Plaintiff claims that U.S. Bank was put on notice that she wanted to file a disability claim through two letters her counsel sent to the bank branch she used to work at. [R. 1 at 23].

In its motion for summary judgment, U.S. Bank asserts that Plaintiff's claims should be dismissed for her failure to exhaust administrative remedies. [R. 46-1 at 7]. Although the statutory language of ERISA does not explicitly require a plan participant to exhaust her administrative remedies prior to commencing suit in federal court, the Sixth Circuit has interpreted ERISA to require such exhaustion. Ravencraft v. UNUM Life Ins. Co. of America, 212 F.3d 341, 343 (6th Cir. 2000) (citing Baxter v. C.A. Muer Corp., 941 F.2d 451, 453-54 (6th Cir. 1991)).

Although Plaintiff never filed a formal claim for benefits with U.S. Bank, she makes several arguments throughout her various motions and responses that her claim should not be dismissed for failure to exhaust administrative remedies because U.S. Bank's actions have effectively prevented her from bringing her benefits claim through the plan's proper administrative channels. It is true that if a plan participant can show that resort to the administrative process would be futile, or that the claimant was wrongfully denied meaningful access to remedies, the Court may excuse the participant's failure to exhaust. E.g., Winchell v. Gen. Motors Corp., 774 F.2d 1165, at *5 (6th Cir. 1985) (unpublished table decision) (citations omitted); see also Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1225 (11th Cir. 2008). Ultimately, the decision of whether or not to require exhaustion of administrative remedies is left to the sound discretion of the Court. Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 418 (6th Cir. 1998). Because there is no administrative record in the present case, the Court cannot address this issue with any deference to the plan administrator. Consequently, the Court will consider the arguments for and against exhaustion under the ordinary Rule 56(a) standard. See, e.g., Johnson v. Hartford, No. 3:12-CV-00654-TBR, 2013 WL 960280, at *4 (W.D. Ky. Mar. 12,

2013) (using Rule 56(a) standard to judge exhaustion issue); <u>Gunn v. Bluecross Blueshield of Tenn., Inc.</u>, No. 1:11-CV-183, 2012 WL 1711555, at *4 (E.D. Tenn. May 15, 2012) (same).

As examples of how U.S. Bank thwarted her benefits claim, Plaintiff alleges that U.S. Bank never provided her with documents describing her benefits plan, failed to inform her of the possibility of a benefits claim upon her termination, and ignored letters her counsel sent to a bank branch hoping to initiate a claim for benefits. In essence, Plaintiff claims that exhaustion should not be required because she was denied meaningful access to U.S. Bank's administrative process. However, in this instance, the Court will not excuse the exhaustion requirement because Plaintiff's arguments fail to prove that she made an adequate effort to pursue administrative remedies.

For example, Plaintiff first argues that she did not pursue administrative remedies because U.S. Bank failed to provide her with plan documents, and she had only "sketchy information" about the disability benefit that was mentioned in her employee handbook. [R. 50-1 at 4]. However, an ERISA plaintiff's "mere allegation that [she] was unaware of the review procedure is insufficient to show lack of meaningful access" to administrative remedies. <u>Koenig v. Waste Mgmt., Inc.</u>, 104 F. Supp. 2d 961, 966 (N.D. Ill. 2000); <u>see</u> <u>Davenport v. Harry N. Abrams, Inc.</u>, 249 F.3d 130, 133 n. 2, 134 (2d Cir. 2001) (holding that plaintiff was required to exhaust administrative remedies even if she was ignorant of the proper claims procedure and had not been provided with a summary plan document); <u>Robyns v. Reliance Standard Life Ins. Co.</u>, 130 F.3d 1231, 1238 (7th Cir. 1997) ("ERISA's procedural and notification requirements are not triggered until the plan administrator denies the claim.").

In that same vein, Plaintiff's assertion that U.S. Bank did not inform her of claim submission procedures upon her termination is not enough to show that she was denied

meaningful access to administrative review. Plaintiff does not contend that she ever even mentioned a disability claim to her supervisor before her termination. The lack of meaningful access exception to the requirement of administrative exhaustion "presupposes that the plaintiff has made at least some effort to assert [her] rights under the plan and that some initial decision denying benefits has been made." Potter v. ICI Americas, Inc., 103 F. Supp. 2d 1062, 1068 (S.D. Ind. 1999). Exhaustion is not excused when the plaintiff has made no request for benefits or no effort to determine what administrative procedures are available. Id. (citations omitted). Thus, the Court cannot find that the exhaustion requirement should be excused simply because U.S. Bank did not volunteer benefits information at the termination of her employment.

Finally, Plaintiff's claim that U.S. Bank failed to respond to her attorney's letters also does not excuse her failure to exhaust administrative remedies. An attorney's letter can be sufficient to initiate administrative review. 29 C.F.R. § 2560.503-1(b)(4). However, at a minimum, the letter must name "a specific medical condition or symptom . . . for which approval is requested." § 2560.503-1(c)(1)(ii)(B).[6] Plaintiff's letters to the U.S. bank branch offer nothing more descriptive than that she is entitled to benefits because of her "illness." [R. 1-1, 1-2]. Thus, they fail to identify "a specific medical condition or symptom." § 2560.503-

---

[6] 29 C.F.R. § 2560.503-1(c)(1)(ii) specifically applies to group health plans rather than disability benefit plans. However, subsection (c) is instructive on what type of effort a disability benefits claimant who fails to follow proper plan procedures must make before a disability plan administrator will be required to respond to the defective filing. In fact, the federal register comments relating to subsection (c) indicate that it originated as a general proposal requiring all plans, group health or disability, to provide a specific notice to a claimant "in any instance in which a participant or beneficiary made a request for a benefit, but failed to follow the plan's procedures for filing a claim." 65 Fed. Reg. 70246-1 (Nov. 21, 2000). But, after reconsidering the notice requirement in the proposed subsection (c), the Department of Labor concluded that it placed too much of a burden on plan administrators, and it limited subsection (c)'s applicability to pre-service, group-health-plan claims because it considered those claims "most critical." Id. Therefore, because a disability benefits claim is not as critical as a pre-service group health claim, a disability benefits claimant is required to make a greater effort to initiate a claim than a pre-service group health claimant would be. Accordingly, a disability benefits plan administrator is not required to respond to a deficient attempt at filing a claim that does not meet, at a minimum, the requirements that a pre-service, group-health-claim filer must meet under subsection (c).

1(c)(1)(ii)(B). Furthermore, Plaintiff's persistent and extensive resort to other administrative remedies, including Drees and Union's benefits administration and the Social Security Administration, demonstrates her ability to understand the appropriate remedies, and it militates against a finding that Plaintiff was denied meaningful access to review. See Lucas v. Warner & Swasey Co., 475 F. Supp. 1071, 1075 (E.D. Penn. 1979).

The Sixth Circuit has noted that "[t]he focus of judicial review . . . is ordinarily on the record made before the administrator and at least some very good reason is needed to overcome that preference . . . ." Wical v. Int'l Paper Long-Term Disability Plan, 191 F. App'x 360, 373 (6th Cir. 2006) (citation and internal quotation marks omitted). Here, Plaintiff's limited effort to pursue an administrative claim has left this Court with no administrative record. Without such evidence, this Court is not in a position to determine the merits of Plaintiff's benefits claim. Plaintiff alleges that U.S. Bank should have better informed her or its benefits plan and that her two letters were sufficient to start administrative review. These assertions do not create a genuine issue of fact such that a jury could find Plaintiff was denied meaningful access to administrative review. See Anderson, 477 U.S. at 248-49. Accordingly, the Court recommends that summary judgment be granted in favor of Union under Fed. R. Civ. P. 56.[7]

---

[7] Plaintiff's Complaint asserts claims against U.S. Bank under § 1132(a)(1)(B) and § 1132(a)(3) under the same predicate set of facts—the circumstances surrounding U.S. Bank not providing her with disability benefit payments. In fact, her Complaint and her subsequent filings in the case frequently and loosely assert breaches of fiduciary duty relating to U.S. Bank's "refusal" to pay disability benefits. [See R. 1 at ¶ 24] ("The decision by U.S. Bank to refuse to pay disability benefits to the Plaintiff is a violation of fiduciary responsibility . . . ."). This raises the question of whether administrative exhaustion is required for breach of fiduciary duty claims under ERISA. Thus far, the Sixth Circuit has declined to take a position on whether exhaustion applies to fiduciary breach claims. See Moeckel v. Caremark RX Inc., 385 F. Supp. 2d 668, 679-82 (M.D. Tenn. 2005). However, the Sixth Circuit has repeatedly stated that exhaustion is required when a § 1132(a)(3) claim is merely a denial of benefits claim repackaged to avoid the exhaustion requirement. See Weiner v. Klais and Co., Inc., 108 F.3d 86, 91-92 & n. 10 (6th Cir. 1997). The basis of Plaintiff's claim is U.S. Bank's denial of benefits, which Plaintiff had an obligation to pursue through administrative channels before she sued in this Court. Id. at 91. Thus, dismissal of Plaintiff's § 1132(a)(3) claim alongside her (a)(1)(B) claim is proper.

## III. RECOMMENDATION

For the reasons stated in its Report and Recommendation and being otherwise sufficiently advised,

IT IS RECOMMENDED that Drees and Union's motion for summary judgment be GRANTED to the extent it seeks dismissal of Plaintiff's § 1132(a)(3) claim against Drees and Union. [R. 58]. Furthermore, IT IS RECOMMENDED that Drees and Union's motion for judgment on the administrative record be GRANTED to the extent that it seeks dismissal of Plaintiff's § 1132(a)(1)(B) claim against Drees and Union. [R. 58]. Accordingly, IT IS RECOMMENDED that Plaintiff's motion for summary judgment against Drees and Union be DENIED. [R. 55]. As a result, both of Plaintiff's benefits claims against Drees and Union should be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that U.S. Bank's motion for summary judgment be GRANTED [R. 46]. Accordingly, IT IS RECOMMENDED that Plaintiff's motion for summary judgment against U.S. Bank be DENIED. [R. 50]. As a result, Plaintiff's benefits claims against U.S. Bank should be DISMISSED WITHOUT PREJUDICE with leave to re-file once the Plaintiff has exhausted her available administrative remedies.

The parties are directed to 28 § U.S.C. 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed October 20, 2014.



Signed By:
Edward B. Atkins
United States Magistrate Judge